## KOONTZ v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads**: DILIGENCE REQUIRED OF: BRAKEMAN FALLING THROUGH BRIDGE. Railroad companies, in providing for the safety of their employes, are not required to anticipate and guard against every possible danger, but only such as are likely to occur. And, while it may be anticipated that trains will have to be stopped in certain emergencies at unusual places, and that employes will be required to go upon the track at such places, yet it cannot be anticipated at *what* places such emergencies will arise; and the company is not required, in view thereof, to have its whole track so guarded as to prevent accidents to employes in such emergencies. Such hazards pertain to the nature of the business, and are assumed by the employe. So *held* in this case, where defendant's train was stopped, in the night time, at an unusual place, on a bridge in process of repair, and plaintiff's intestate, a brakeman, in passing along the track, in the performance of his duty, stepped through the bridge and was killed.

*Appeal from Johnson Circuit Court.*

FRIDAY, DECEMBER 5.

JOHN S. KOONTZ was in the employ of the defendant as a brakeman on a freight train, and fell from a bridge and was killed. The plaintiff is administrator of his estate, and seeks to recover damages caused by the death of the deceased. On motion, the court directed the jury to find for the defendant, which they did, and the plaintiff appeals.

*C. S. Ranck, S. M. Finch* and *S. H. Fairall*, for appellant.

*Boal & Jackson* and *T. S. Wright*, for appellee.

SEEVERS, J.—A short distance west of Iowa City the defendant constructed a bridge, which formed a portion of its track. At the time of the accident the defendant was engaged in repairing the bridge, or rather was at that time replacing the old with a new bridge. The old bridge, or portions of it, had been taken away, but trains continued to pass over it as previously, except that they were run at a less

rate of speed. The accident occurred about 9 o'clock at night. The train was stopped on the bridge because the engineer supposed some of the cars were off the track, or one of the brakes was set. The deceased was riding in the cab with the engineer or fireman, and when the train stopped the fireman picked up a lantern and got down for the purpose of seeing what was the matter, and the deceased also did the same thing, but he did not have any lantern. When the deceased was next seen he was lying at the base of an abutment of the bridge, greatly injured, and because of such injuries he in a few days thereafter died. The deceased must have passed on the grade alongside the cars for a short distance, and stepped off the abutment through an opening in the bridge. There is no evidence tending to show that trains usually stopped on the bridge, or where this one did, for any purpose which required an employe to get down from the train on the track or bridge. The plaintiff claims to be entitled to recover because the bridge was " in an unsafe and dangerous condition for the employes of the defendant, whose duty it was to go upon the same." There was evidence tending to show that, when there is anything the matter with the train which causes it to be stopped, it is the duty of the brakeman to ascertain what the matter is, and in the performance of his duty he may get down on the track and walk alongside of the cars.

One material question discussed by counsel is whether the defendant was negligent in permitting the bridge to be in the condition it was. In determining this question it will be assumed that, but for the repairs being, made the accident would not have occurred,—that is, that the old bridge was so constructed with planks laid over the same that the deceased would not have fallen ; but there was no evidence tending to show that he had knowledge that such was the case, or could possibly have so supposed. Bridges and railway tracks must be repaired, and in doing so ordinary care must be exercised. What probably will occur should be anticipated and guarded against. The bridge in question was sufficient for trains to

pass over it with safety. For this purpose due care did not require that the bridge should be planked. If, however, it was necessary for employes to pass over the bridge in the performance of their duties, ordinary care would seem to require that barriers should be erected, or other precautions against accident used; the rule being, as we understand, when employes are required to use appliances in the performance of their duties, that such appliances should be kept in suitable repair, and be reasonably sufficient for the purpose intended Several authorities are cited in support of this proposition, and we do not understand the rule to be controverted by counsel for the defendant. Their contention is that it could not be anticipated that something would occur which would render it necessary to stop the train at the place it did, and that it would be necessary for an employe to pass along the track, and over the bridge, for the purpose of ascertaining what was the matter ; and we think this is so. If this is not true, then every bridge must be planked, or otherwise guarded, and barriers must be erected at every cattle-guard; for it is impossible to tell where it may become necessary or prudent for a train to be stopped, and an employe required, in the performance of his duty, to pass alongside of the train for some necessary purpose. There is no evidence tending to show that this bridge is an exception to those constructed at other places on the line of the road. Ordinarily, it is not expected that employes will be required to walk across bridges, and they are not ordinarily constructed so that this can be done with entire safety ; at least, during the night-time.

Ordinary care does not require that every possible contingency must be anticipated and guarded against, but only such as are likely to occur. That a railroad company should anticipate that a train may, for some necessary purpose, be stopped at a place other than the usual stopping-places, is possibly true ; but at what place cannot be anticipated, and therefore they, in the exercise of ordinary diligence, are not

required, as we have said, to plank every bridge or cattle-guard, and have the whole track so guarded as to prevent accident to employes.   The hazardous nature of the business is such that accidents occur for which the company is not responsible ; and this is one of them.   In support of the foregoing views, analogous cases might be cited.   The facts, however, in such cases not being like those in the present case, we are content to base our conclusion on principle.

It is said that the court erred in not submitting the question of negligence to the jury, but, as there is no dispute as to the facts above stated, we think it was for the court to determine such question as a matter of law.

AFFIRMED.